IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 16, 2019 Session

**STATE OF TENNESSEE v. JOHNNY DAVID KEY**

**Appeal from the Criminal Court for Fentress County**
**No. 17-101    Shayne Sexton, Judge**

_____

**No. M2019-00411-CCA-R3-CD**

_____

The Defendant, Johnny David Key, was convicted upon his guilty pleas of vehicular homicide, a Class B felony, and vehicular assault, a Class D felony. *See* T.C.A. §§ 39-13-213 (vehicular homicide) (2018), 39-13-106 (vehicular assault) (2018).    The plea agreement called for Range I sentences of eight and four years, respectively, to be served concurrently, with the manner of service to be determined by the trial court. After a sentencing hearing, the court ordered that the Defendant serve his effective eight-year sentence in the Department of Correction. On appeal, the Defendant contends that the trial court erred in denying alternative sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Harold E. Deaton, Jamestown, Tennessee, for the appellant, Johnny David Key.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Jared Effler, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The transcript of the guilty plea hearing has not been included in the appellate record. However, the record contains exhibits which were filed on the same date as the guilty plea hearing, and which we presume are the hearing's exhibits. These exhibits contain the following information relative to the offenses:  The Defendant and the victims, Sarah Phillips and Jeremy Banks, were traveling toward each other on a well-traveled road on June 20, 2016. As the Defendant entered a curve, he veered into the victims' lane. Ms. Phillips attempted to avoid him by going into the opposite lane, but

the vans collided. Mr. Banks died from injuries sustained in the wreck, and Ms. Phillips and the Defendant were injured. Photographs of Ms. Phillips's van show extensive front-end damage. A blood alcohol report reflects that the Defendant's blood alcohol content was 0.131 gram percent. Mr. Banks's death certificate reflects that his primary cause of death was traumatic chest injury and that his secondary cause of death was cardiac arrest. The death certificate lists the injury as having occurred in a head-on collision.

At the sentencing hearing, Michael Beaty, a former employee of the Fentress County Ambulance Service, testified that he responded to the scene of the wreck. He said he noticed a strong odor of bleach coming from the wrecked van, which had a male occupant. He said he and other first responders coughed and had symptoms of irritation to their airways, noses, and eyes from the odor.

Tennessee Highway Patrol (THP) Sergeant Joe Walker testified that, as part of the investigation in this case, he interviewed the hospitalized Defendant. Sergeant Walker agreed that the Defendant asked about what happened to the bleach he had been transporting at the time of the wreck. Sergeant Walker said that when he asked the Defendant whether the Defendant had been drinking on the date of the wreck, the Defendant stated he had a Diet Pepsi. Sergeant Walker said that he asked the Defendant about wine, liquor, moonshine, or beer and that the Defendant denied drinking them. Sergeant Walker said that if the Defendant had since admitted drinking four beers on the date of the wreck, this information was inconsistent with what the Defendant told him during the investigation. Sergeant Walker did not recall the date on which he interviewed the Defendant and did not know the extent of the Defendant's injuries. As best Sergeant Walker recalled, the Defendant appeared to understand their conversation. Sergeant Walker agreed he would not have talked with the Defendant if the Defendant had appeared not to understand.

THP Sergeant John McFarland, a member of the Critical Incident Response Team, testified as an expert in crash reconstruction. Sergeant McFarland said that he determined after his investigation that the Defendant's van failed to stay in its lane and hit a van driven by Sarah Phillips, causing significant damage to both vans.

Sarah Phillips testified that her then-fiancé, Jeremy Banks, was with her on the date of the wreck. She said he died from the injuries he sustained in the wreck. She said she had some minor injuries, which included deep tissue bruising on her breast bone and neuropathy in both knees. She said that, at the time of the sentencing hearing, her knees remained swollen and hurt. She said she struggled to work to provide for her family. She said her family had been impacted emotionally by the loss of Mr. Banks, who had been like a father to her children.

Ms. Phillips testified that she and Mr. Banks were on their way to a store on the day of the wreck and that as they approached a curve, a van came around the curve on her side of the road. She said that she went into the opposite lane to try to avoid being hit by the other van but that the other van hit her van's front passenger side, spinning her van sideways and causing the rear of her van to hit a rock wall. She agreed that the road on which the wreck occurred was a major road, that the wreck occurred during daylight hours, and that her vehicle was too damaged to be repaired. She said her van had been worth about $8,000 and that she had reached a settlement agreement with the Defendant's insurance company for $50,000. She said her medical expenses and attorney's fees were paid by the settlement proceeds and that she received the balance.

Michael Banks, Jeremy Banks's father, testified that Jeremy Banks had four children, a mother, and a brother. Michael Banks read a victim impact statement on behalf of the Banks family, which included the following: Jeremy Banks's oldest child had been ten years old and the youngest had been three months when Jeremy Banks died. Jeremy Banks had been close to his younger brother. Jeremy Banks had plans to pursue education, had been happy with his job, and wanted to provide for his family. Michael Banks said he noticed people who resembled Jeremy Banks in crowds. Michael Banks said the damage to the Banks family due to Jeremy Banks's death could not be repaired and asked that the court consider their loss in making its sentencing decision.

The presentence report, which was received as an exhibit, reflects that the then-forty-nine-year-old Defendant was a high school graduate with no criminal history. He was married and had four children. Relative to the offenses, the Defendant provided a written statement to the presentence investigator, which stated the Defendant, whose weight is listed elsewhere in the report as 340 pounds, drank six beers on the day of the wreck. He said that he had repaired lawn mowers, mowed, and unloaded furniture on the day of the wreck. He said he left home to buy gas. He said he spoke by telephone with his wife and told her he was thinking about buying more beer because he was in pain from mowing and that she asked him to take an Epsom salt bath instead of drinking beer. He said he had little memory of the wreck, but he remembered entering the curve on the road and noticing the steering wheel feel like it had jumped from his hand. He said he did not know if his hand had slipped. His next memories were of being inside the van after the wreck. The Defendant reported poor mental health due to anxiety and depression related to a prior back injury, home foreclosure, and knee injury. He reported poor physical health, including the need for future surgeries. He reported that he received Social Security disability payments. The risk assessment reflected that the Defendant was at low risk to reoffend.

The defense offered letters from the Defendant's family members as exhibits. The letters detailed the Defendant's physical limitations after the wreck. The Defendant is confined to a wheelchair or a recliner, cannot lie in a bed, has pain daily, and leaves home only for doctors' appointments. The letters also attested to the Defendant's involvement with his family, including his having taken custody of two of his children due to their mother's addiction issues, and his closeness with his grandchildren. Family members expressed their sympathy to Jeremy Banks's family for their loss and to Ms. Phillips for her injuries.

The Defendant read an allocution, in which he stated the following: He was sorry for the loss suffered by the Banks and Phillips families. He expressed his remorse to his own family for the pain, loss, and shame he had caused. He said it had been difficult for him to be unable to take care of his family while having to rely on their help due to his disability from the wreck. He said he had broken his hip, femur, and ribs, had lacerated his liver, bruised his lungs, and sustained an upper abdominal injury. He said that he had three surgeries and that his femur was not fully healed. He said he would be continuing physical therapy for "a long time" because he used a walker and a wheelchair and had preexisting knee issues. He said he faced additional surgeries in the future. He said he was in significant pain, could not lie down, and had slept in a recliner for two and one-half years. He said he had a prior disability due to a work-related injury in 2006. He said he had not had alcohol or driven a car since the wreck, which he said had changed his life. He said he would never drink again. He said he accepted responsibility for his actions and would follow the court's order.

After receiving the evidence, the trial court found the personal injuries or property damage suffered by the victims was particularly great. *See* T.C.A. § 40-35-114(6) (Supp. 2015) (subsequently amended). The court also found that the potential for danger to others existed due to the wreck's having occurred on the particular roadway, although the court did not apply great weight to this enhancement factor. *See id.* § 40-35-114(10). The court acknowledged that the Defendant had shown remorse but found that none of the statutory mitigating factors applied. *See id.* § 40-35-113 (2018).

The trial court noted its consideration of the facts and circumstances of the case. The court concurred with the risk assessment conclusion that the Defendant was at low risk of reoffending. The court noted that the Defendant had accepted responsibility and thought that the Defendant would comply with rehabilitative requirements. The court found that measures less restrictive than confinement had not been applied frequently or recently, given the Defendant's lack of a criminal history. The court found that no proof showed that confinement was particularly suited to provide an effective deterrent. With regard to whether the offense was particularly egregious, the court found that the

seriousness of the offenses was reflected in the charged offenses. Although the court acknowledged that probation was a possible sentence for vehicular homicide, it found that unduly depreciating the seriousness of the offenses by granting probation was the compelling concern in the Defendant's case. The court found that the Defendant was willing to get in a car and drive after drinking despite his having been urged not to by another person and his causing the death of one person and the injury of another. The court found that this was the "overriding factor in determining this defendant is not a good candidate for alternative sentencing." The court found that what happened had been completely foreseeable.

The trial court ordered the Defendant to serve his effective eight-year sentence. This appeal followed.

The Defendant contends that the trial court abused its discretion in sentencing him to the Department of Correction. He argues that the court misconstrued evidence, erred in applying one of the enhancement factors and in failing to apply mitigating factors, erred in basing its ruling on the need to avoid depreciating the seriousness of the offense, and failed to consider alternative sentencing. The State responds that the court did not abuse its discretion. We agree with the State.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103, -210; *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as

provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see Bise*, 380 S.W.3d at 708. Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *Ashby*, 823 S.W.2d at 168; *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant who otherwise qualifies for probation or alternative sentencing to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2018); *see Trotter*, 201 S.W.3d at 654.

We begin by noting that that the Defendant's vehicular homicide conviction was a Class B felony. As such, he was not considered to be a favorable candidate for an alternative sentence for this offense. *See* T.C.A. § 40-35-102(6)(A) (2018). The Defendant's concurrent vehicular assault conviction was a Class D felony. As a Range I offender, he was considered a favorable candidate for an alternative sentence for this conviction unless evidence to the contrary existed. *See id.*

The record reflects that the trial court considered the facts and circumstances of the case, the enhancement and mitigating factors, and the statutory sentencing principles

and considerations. The court noted that the Defendant had no criminal history and found that the Defendant was likely to comply with any rehabilitative conditions of a sentence. The court was troubled, though, by the Defendant's decision to drive after drinking six beers and noted the foreseeability of what occurred as a result of the Defendant's decision. The court also noted the particularly great personal injuries or property damage caused by the Defendant's actions. The record reflects that the court engaged in a detailed analysis and that, upon weighing the relevant facts, determined that the Defendant should serve his sentence, rather than receive an alternative sentence.

The Defendant argues that the trial court misconstrued evidence based upon its finding that the Defendant drove despite another person's encouraging him not to drive. The Defendant is correct that the evidence does not support the court's finding in this regard. The evidence showed, instead, that the Defendant spoke with his wife while he was on his errand to buy gas and that she asked him not to buy beer and to take an Epsom salt bath instead for his pain. Notwithstanding the court's factual error in this regard, the record reflects that the Defendant admitted he drank six beers, that he weighed 340 pounds, that he had a blood-alcohol content of 0.131 gram percent, and that he chose to drive on a well-traveled road. The court noted that the unfortunate events that occurred from the Defendant's actions had been foreseeable.

The Defendant also argues that the trial court erred in finding that an enhancement factor applied for particularly great personal injuries or property damages. *See id*. § 40-35-114(6). The Defendant argues that Ms. Phillips was compensated for the loss of her $8,000 van and her medical expenses of an unknown amount by the $50,000 insurance settlement. The record reflects that the victims in this case suffered more than monetary loss and that the Defendant's actions caused particularly great injuries to both victims.

With regard to Ms. Phillips, the record shows that she was still plagued by the residual physical effects of the wreck at the sentencing hearing, which took place approximately two and one-half years later. Ms. Phillips testified that her family had been greatly affected by the loss of Mr. Banks, who had been like a father to her children, and Mr. Banks's father testified that his family, including Mr. Banks's children and grandchildren, were likewise greatly affected by his death. Although the offense of vehicular assault contemplates serious bodily injury, the record supports the court's conclusion that Ms. Phillips's injuries were particularly great.

In the case of Mr. Banks, the record reflects that he was killed in a head-on collision with significant impact occurring near where he was seated in the front passenger seat. Photographs of Ms. Phillips's van reflect catastrophic damage to the area of the van near where Mr. Banks was seated. Ms. Phillips testified that after the collision,

her van was thrown into a rock wall. Mr. Banks's death certificate reflects that he died of a traumatic chest injury and cardiac arrest. Although the offense of vehicular homicide contemplates a death, the evidence shows that the manner of Mr. Banks's death involved particularly great injuries. The record supports the court's application of this enhancement factor.

The Defendant also argues that the trial court should have found that statutory mitigating factors applied. *See id.* § 40-35-113. He has not identified any specific factors listed in the statute which he contends the court should have applied, but he argues generally that he was amenable to correction, that he had no criminal record, that he had poor mental health, and that no deterrence value existed in incarcerating him. The record reflects that the court acknowledged these matters and considered them in its overall sentencing determination. Nevertheless, the court concluded that none of them rose to the level of mitigation under the statute. The Defendant also argues that the court failed to consider the Defendant's poor physical health and need for future surgeries as a mitigating factor. The record reflects that the court recognized that the Defendant "has gone through a great deal himself" but commented, as well, that the Defendant was "the author of [his] own predicament." The record supports the trial court's determination relative to the lack of mitigating factors.

The Defendant also argues that the trial court erred in basing its ruling on the need to avoid depreciating the seriousness of the offense and failed to consider alternative sentencing. The court stated, in pertinent part:

> To actively get on the road after drinking at a level that's been verified through a lab and thinking there – or not expecting or not buying into a risk fully depreciates the seriousness of not just the crash but the act of driving. . . . When we drive on our roads, you owe your best to everyone else out there. And in this case, it was not given – the best was not given, the high risk was completely – this is so foreseeable that I cannot in good [conscience] think of an alternative sentence that would suit this case. . . .
> I have in my mind looked at alternative sentencing as a reasonable sentence, and I can't do it. I just – there is just nothing. The seriousness of this offense overrides everything else, that this was predictable in driving under those circumstances, and I simply cannot in good [conscience] condone that.

The quoted passage, as well as other portions of the transcript, reflect that the court considered, but ultimately rejected, alternative sentencing. At oral argument, the State acknowledged that the trial court made an erroneous factual finding regarding the

Defendant's driving after having been urged not to by his wife. The question that remains is whether it appropriately relied upon the need to avoid depreciating the seriousness of the offense in so doing.

We note, first, that defendants who have been convicted of vehicular homicide by intoxication and vehicular assault are statutorily ineligible for a sentence of full probation due to statutorily imposed minimum jail terms which must be served before any potential release on probation. *See id.* §§ 39-13-106(b)(2), 39-13-213(b)(2)(A). Thus, the Defendant could receive, at best, a sentence of split confinement involving service of part of his sentence in jail, followed by probation or community corrections.

If probation is denied solely on the basis of the circumstances of the offense, they "must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than probation. *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (citations omitted). This court has recognized, "This standard has essentially been codified in the first part of T.C.A. § 40–35–103(1)(B) which provides for confinement if it 'is necessary to avoid depreciating the seriousness of the offense.'" *Id.* at 375.

The record reflects that the trial court conducted a detailed analysis of the statutory factors and determined that the egregious nature of the offense required confinement in order to avoid depreciating the seriousness of the offense. The court was compelled by the evidence that the Defendant chose to drive on a frequently traveled road while he was intoxicated well beyond the legal limit. The court also noted that the Defendant's conduct caused great damage to two victims and the Defendant himself.

Upon review, we conclude that the trial court did not abuse its discretion in concluding that the circumstances of the offense outweighed the factors which favored probation. We conclude, as well, that the trial court did not abuse its discretion in denying other forms of alternative sentencing. The Defendant made no argument at the sentencing hearing, nor does he on appeal, that he was an appropriate candidate for community corrections. In fact, he was statutorily ineligible for community corrections pursuant to Code section 40-35-106(1)(B) (2018) because he was convicted of crimes involving alcohol-related felony offenses and crimes against the person. Likewise, he has made no argument to support a conclusion that the court erred in not sentencing him to community corrections under the "special needs" provision of Code section 40-35-106(c).

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE